# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## BEFORE THE COURT FOR EN BANC CONSIDERATION

## NO. 03-10-00108-CV

**S & P Consulting Engineers, PLLC, Appellant**

**v.**

**Sherman Baker, Denessa Baker, Aundi Bennett, David Cervantes, Melissa Cervantes, Quincy Davis, Mary Davis, Antonio Gonzales, Sandra Gonzales, Anthony Grimes, Jessica Grimes, Maria Herrera, Oliver Koenig, Heather Koenig, Bryan Parks, Nicoshia Parks, Angela Partida, Gilbert Partida, David Pena, Jessica Pena, Diane Perez, Joe Perez, Angel Ramirez, Frances Ramirez, Melissa Rebolloso, Tammy Lynn Ross, Catalino Serrano, Juana Serrano, Joseph Silva, JoAnna Silva, Daniel Sustaita, Samantha Sustaita, Lydia Torres, and Maria Zuniga, Appellees**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT NO. 08-0942, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## O P I N I O N

S & P Consulting Engineers, PLLC, appeals the trial court's denial of S & P's motion to dismiss for failure to file a certificate of merit within thirty days of filing the petition. We conclude that, under the applicable law, appellees were required to file a certificate of merit with their petition regarding all claims for damages arising out of the provision of professional services

by a design professional. *See* former Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a).[1] Because appellees did not file a certificate of merit regarding such claims with their first petition making claims against S & P, we reverse the trial court's denial of the motion to dismiss the case. *See id.* § 150.002(d).[2] Because appellees, in choosing not to file a certificate of merit, may have relied on previous cases in both this Court and others interpreting section 150.002 of the Texas Civil Practice and Remedies Code differently and because the trial court may have relied on that same authority in declining to dismiss this case, we remand this cause for further proceedings in the interest of justice.[3]

**Background**

This suit arises from alleged mistakes and misrepresentations in the platting of a residential subdivision in which appellees[4] purchased lots. Appellees allege that, in 2002, many lots

---

[1] Act of May 27, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370, *amended by* Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (now codified at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a), (b) (West Supp. 2009)); *see also* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348.

[2] *Id.* (now codified at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(e)).

[3] Although this appeal was originally submitted to a panel of this Court comprised by Chief Justice Jones and Justices Pemberton and Waldrop, the panel's proposed resolution of this issue brought it into conflict with a holding of the panel in *Consolidated Reinforcement, L.P. v. Carothers Executive Homes, Ltd.*, 271 S.W.3d 887, 893 (Tex. App.—Austin 2008, no pet.). The panel in this case on its own motion referred this appeal to the Court sitting en banc to resolve the conflict. *See* Tex. R. App. P. 41.2(c) (providing that although en banc consideration is disfavored, it can be ordered when necessary to secure or maintain uniformity of court's decisions). Justice Waldrop is no longer a member of the Court and takes no part in this opinion. Justice Patterson, who was a member of this Court when the determination was made to consider the case en banc, has completed her term in office and takes no part in this opinion.

[4] Appellees are Sherman Baker, Denessa Baker, Aundi Bennett, David Cervantes, Melissa Cervantes, Quincy Davis, Mary Davis, Antonio Gonzales, Sandra Gonzales, Anthony Grimes, Jessica Grimes, Maria Herrera, Oliver Koenig, Heather Koenig, Bryan Parks, Nicoshia Parks, Angela Partida, Gilbert Partida, David Pena, Jessica Pena, Diane Perez, Joe Perez, Angel Ramirez, Frances

in the subdivision were within a flood plain requiring homeowners to buy flood insurance. The plat obtained and filed by the developer, however, showed the entire subdivision to be outside that flood plain. Appellees allege that S & P was responsible for certifying the plat for parts of the subdivision. Appellees allege that the developer and its successors knew that homes in the subdivision were within the flood plain, but represented that the homes were not in the flood plain. Appellees contend that they purchased homes relying on representations that the homes were not in the flood plain. They allege that, "[i]n the fall of 2005," some appellees received notices advising them that they had to buy insurance because their homes were in the flood plain. Although the developer's successor offered to pay for the insurance and the development has gained removal from the flood plain, appellees contend that the removal may be temporary and that the risks and potential costs and losses associated with the flood plain designation still loom.

In May 2008, appellees sued several parties, including Clarence L. Littlefield and Southwest Engineers, Inc., alleging claims for deceptive trade practices and fraud. On November 5, 2009, appellees filed a Third Amended Petition that added S & P as a defendant.[5] Appellees allege that the misrepresentations regarding the flood plain violated the deceptive trade practices act and constitute statutory and common-law fraud.[6] On December 19, 2009, S & P answered and moved to dismiss, contending that appellees' failure to file a certificate of merit

---

Ramirez, Melissa Rebolloso, Tammy Lynn Ross, Catalino Serrano, Juana Serrano, Joseph Silva, JoAnna Silva, Daniel Sustaita, Samantha Sustaita, Lydia Torres, and Maria Zuniga.

[5] Appellees assert without contradiction that S & P was first added to this lawsuit in October 2009 by a third-party complaint.

[6] Appellees also alleged negligence and negligent misrepresentation, but expressly made those claims only against defendants other than S & P.

regarding the claims against S & P in their Third Amended Petition required dismissal of appellees' claims against S & P. Appellees responded that a certificate of merit was required only in actions alleging negligence, that plaintiffs did not allege negligence or negligent misrepresentation against S & P, and, therefore, that no certificate of merit was required for the claims against S & P. The district court denied the motion to dismiss on February 5, 2009, and this appeal followed.

**Standard of review and issues on appeal**

We review a trial court's order denying a motion to dismiss for failing to file a certificate of merit under an abuse of discretion standard. *Kniestedt v. Southwest Sound & Elecs., Inc.*, 281 S.W.3d 452, 454 (Tex. App.—San Antonio 2007, no pet.). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). We review a trial court's ruling on a question of law de novo because a "trial court has no 'discretion' in determining what the law is or applying the law to the facts," *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992), and therefore "abuses its discretion" if it misinterprets or misapplies the law. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Walker*, 827 S.W.2d at 840.

S & P challenges the trial court's interpretation of the effective date and meaning of amendments to section 150.002. S & P contends that the suit should be dismissed under either the 2009 amendments or the 2005 amendments. Appellees argue that the 2009 amendments, applicable to cases commenced on or after September 1, 2009, do not apply because this case was filed before the effective date of the statute. Appellees assert that S & P conceded at trial that the 2005 version

of the statute does not apply to their claims, and they argue that, even if S & P did not waive the right to argue for application of the 2005 version of the statute, the 2005 version did not require a certificate for non-negligence claims.

**The history of section 150.002**

The evolution of civil practice and remedies code section 150.002 provides context for our analysis. As enacted in 2003, the statute required plaintiffs filing claims against licensed engineers to file an affidavit, called a certificate of merit, from a third party licensed or registered in the same area of practice as the defendant "[i]n any action for damages alleging professional negligence by a design professional in cases alleging negligence." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847, 896-97 (codified as Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (since revised)). The statute required the certificate to "set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for such claim." *Id.*

Section 150.002(a) was amended in 2005 to change the nature of the allegations for which a certificate of merit was required. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370.[7] The amendment omitted the language limiting the requirement to claims "alleging professional negligence" and broadened the scope of cases in which a certificate of merit is required. *Id.* (codified at § 150.002(a)(since amended)). It provided in relevant part as follows:

---

[7] There was another amendment in 2005, but its provisions do not control the issues in this appeal. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 2, 2005 Tex. Gen. Laws 348, 348 (broadening scope of covered actors, changing "design professional" to "licensed or registered professional," and adding registered professional land surveyor to list of those covered by statute).

> In any action or arbitration proceeding *for damages arising out of the provision of professional services* by a design professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect or licensed professional engineer competent to testify, holding the same professional license as, and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim.

*Id*. (emphasis added). The 2005 amendments also made the denial of a motion to dismiss under section 150.002 appealable immediately as an interlocutory order. *Id.* (codified as Tex. Civ. Prac. & Rem. Code Ann. § 150.002(e) (renumbered in 2009 as section 150.002(f))). This version of the statute was expressly made applicable to "a cause of action that accrues on or after the effective date of this Act," which was September 1, 2005. *See id.*, §§ 4, 5.

Section 150.002(a) was amended again in 2009, effective September 1, 2009. Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (codified at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a) (West Supp. 2009)). The revisions did not change the requirement that a certificate be filed in "any action" for damages arising out of the provision of professional services, but added more detail regarding the qualifications of the expert. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a). The 2009 amendments also gave the portion of the statute dealing with the contents of the certificate its own subsection and provide much greater detail:

> The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim.

*Id*. § 150.002(b). These amendments, however, apply

6

only to an action or arbitration filed or commenced on or after the effective date [Sept. 1, 2009] of this Act. An action or arbitration filed or commenced before the effective date of this Act is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.

Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 3, 2009 Tex. Gen. Laws 1991, 1992.

**Which version of the statute applies?**

S & P contends that the 2009 amendments apply to the appellees' claims against it because it was not a party to this case—and, therefore, the "action" did not "commence" against it—until after September 1, 2009. Appellees argue that the action commenced when they filed their original petition in 2008, that the statute in effect then did not require plaintiffs to file a certificate of merit for non-negligence claims, and that they were not required to file a certificate with respect to any defendant added to this case at any time thereafter.

Our primary objective in statutory construction is to give effect to the legislature's intent through the language of the statute. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We rely on the plain meaning of the statutory text, unless a different meaning is supplied by legislative definition or is apparent from context, or such construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005). We resort to rules of construction or extrinsic aids only when the words of the statute are ambiguous. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We then presume that the entire statute is intended to be effective and that a just and reasonable result is intended. Tex. Gov't Code Ann. § 311.021(2), (3) (West 2005). We may consider the object sought to be attained, the circumstances under which the statute was enacted, former provisions, and the

7

consequences of a particular construction. *Id.* § 311.023 (West 2005). We may consider the legislative history of a statute regardless of whether the statute is considered ambiguous on its face. *Id.* § 311.023(3).

Whether the 2009 amendments apply depends on when an action commences consistent with the enabling language of the 2009 amendment of the statute. Neither the revised statute nor its enabling language specifies whether an action commences for all persons with the filing of the original petition or whether an action commences for each defendant the first time it is named as a defendant. We look to the rules of civil procedure for some guidance and context for interpreting the words "action" and "commence." *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). Rule 22 states that "[a] civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk." Tex. R. Civ. P. 22. Thereafter, "additional parties, necessary or proper parties to the suit, may be brought in," indicating that these new parties are being added to an action that has already commenced. *See id.* R. 37. The next procedural rule, though not substantively applicable to the addition of these appellants, sheds some light on when the drafters of the rules of procedure considered an action to commence with respect to later-added parties. *See id.* R. 38. Rule 38 appears to use the word "action" as a substitute for "suit" as used in rules 22 and 37, providing in part as follows:

> At any time *after commencement of the action* a defending party, as a third-party plaintiff, may cause a citation and petition to be served upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him. . . . A third-party defendant may proceed under this rule against any person not a party to the action who is or who may be liable to him

8

or to the third-party plaintiff for all or part of the claim made in the action against the third-party defendant.

*Id.* R. 38(a) (emphasis added). This rule does not state or indicate that these new petitions commence new actions or suits against the new parties; rather, the subsequent petitions by defendants against new parties become part of an action that has already commenced. While these rules are not conclusive regarding the legislature's intent in drafting the enabling language of the 2009 version of section 150.002, they provide a context indicating that the filing of the original petition commences the action with respect to all parties regardless of when they are brought into the action.

The dissent argues that, when the legislature desires to make statutory amendments inapplicable to existing cases, it does so expressly. The dissent notes that the first 2005 amendment of section 150.002 illustrates this with its enabling language:

> This Act applies only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act, *including an action filed before that date in which a party is joined or designated after that date*, is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose.

Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 4, 2005 Tex. Gen. Laws 348, 348 (emphasis added). The dissent contrasts that with the enabling language of the 2009 amendment that lacks the emphasized phrase. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 789, § 3, 2009 Tex. Gen. Laws 1991, 1992.

We are not persuaded, however, that the absence of the italicized language in the 2009 amendment's enabling language signifies that the legislature intended the opposite meaning from

9

the enabling language of the 2005 amendment. Had the legislature intended that result, it could have expressly stated that intent by substituting the word "excluding" into the italicized phrase.[8]  This is not an instance in which we are examining the significance of the legislature's removal of language from an existing statute.  Here, the legislature used different enabling language to describe the set of cases to which different versions of the statute applied.  Examining the meaning of the italicized phrase within the context of the first 2005 amendment should help illustrate whether its omission in 2009 should be given significance.  Juxtaposing the two key phrases—"an action filed before the effective date of the statute" from the main clause and the italicized "an action filed before that date in which a party is joined or designated after that date"—highlights the fact that the second phrase is essentially identical to the first until the modifying portion "in which a party is joined or designated after that date."  The set of actions commenced before the effective date of the statute includes those in which a party is later designated.  We conclude that the italicized phrase was meant merely to emphasize that inclusion, and that the omission of the italicized phrase in the 2009 enabling language is not legally significant.[9]

---

[8]  The following enabling language would more clearly express the intent inferred by the dissent:

> This Act applies only to an action filed on or after the effective date of this Act.  An action filed before the effective date of this Act, *excluding an action filed before that date in which a party is joined or designated after that date*, is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose.

The legislature did not make that exclusion, however, nor did it evince that intent in any other express manner.

[9]  A simplified example may help illustrate the point.  If the legislature passed a law in 2005 that said, "The justices of the court, including the justices of the court with brown hair, must wear

10

We conclude that, for purposes of the effective date of the 2009 version of section 150.002, an action commences when the original petition is filed. For this purpose, the action does not recommence with the filing of an amended petition even if that petition names a new defendant for the first time. The action from which this appeal arises commenced with the filing of the original petition against the original defendants in May 2008, and S & P is merely an additional party who has been brought into that action. *See* Tex. R. Civ. P. 37; *see also* Tex. R. Civ. P. 38(a).[10] Because

robes on the bench," and then passed an amended statute in 2009 that said, "The justices of the court must wear robes on the bench," a reader in 2009 would conclude that a brown-haired justice must wear a robe even though no longer expressly and uniquely directed to do so.

[10] Our holding in this case that an action commenced, for purposes of determining the effective date of the statute, when the first petition was filed against the first defendant is not inconsistent with this Court's holding that the "original petition" in an action is, for purposes of a medical expert report statute, the first petition that names a particular defendant. *See Hayes v. Carroll*, 314 S.W.3d 494, 501 (Tex. App.—Austin May 14, 2010, pet. pending).

In *Hayes*, we considered a statute requiring the filing of an expert report "not later than the 120th day after the date the original petition was filed." *See id.* at 499 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2009)). The claimant filed an amended petition adding new medical defendants, with expert reports applicable to each new defendant attached to the amended petition, 175 days after the original petition. The new defendants moved to dismiss, arguing that the new expert reports were late because they were served more than 120 days after the original petition filed against the original defendants. *Id.* In other words, the new defendants contended that the expert reports describing the new defendants' responsibility were due 55 days before they were named as defendants. Accepting the new defendants' interpretation would have caused the expert-report statute to function as an undeclared but de facto statute of limitations for all claims against other potential defendants. Instead, finding no indication the legislature enacted a disguised statute of limitations, this Court concluded that the expert report supporting a health care liability claim must be filed 120 days after the first petition naming a particular defendant. *Id.* at 501. This interpretation gave meaning to the statute and avoided unintended consequences.

The context of the issue in this case is different. For one, the statute at issue here requires the filing of a certificate "with the complaint" rather than the "original petition" as in *Hayes*. Further, the issue here is when an "action" is "commenced" rather than what "original petition" starts the deadline for an expert report ticking. More critically, instead of determining whether a claim is unnecessarily barred by an unintended use of a statute, we are considering which version of a statute

11

the suit was filed before the effective date of the 2009 amendments, those amendments do not apply to this case.

The enabling language of the 2009 amendment states that an action filed before its effective date "is governed by the law in effect immediately before the change in law made by this Act, and that law is continued in effect for that purpose." Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 4, 2005 Tex. Gen. Laws 348, 348. We must now determine what the applicable law in effect was. Section 150.002 was previously amended in 2005. That version of the statute applies in "a cause of action that accrues on or after the effective date of this Act," which, for the relevant requirements, was September 1, 2005. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 208, §§ 4, 5, 2005 Tex. Gen. Laws 369, 370.[11] A cause of action for fraud does not accrue until the plaintiff discovers or, in the exercise of reasonable care and diligence, should have discovered the fraud. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex.1997). For purposes of this analysis, based on appellees' live petition, appellees allege that they did not discover the alleged fraud until "the fall of 2005" when some of them began receiving notices stating that their properties were in the flood

the legislature wanted to be applicable on the facts before us. In this case, S & P would have us change the rules in the middle of the case when the enabling language plainly demonstrates the opposite intent. While one could argue that an "action is commenced" with an "original petition," we do not interpret statutory language in a vacuum. Context is critical, as are the consequences of a particular construction. *See* Tex. Gov't Code Ann. § 311.023 (West 2005). Given the disparate context and consequences, we conclude that our determination that an action commences, for purposes of the effective date of the 2009 amendments of section 150.002, on the date of filing of the first petition against any defendant is not controlled by or inconsistent with our interpretation of the term "original petition" in *Hayes*.

[11] As set out above in footnote 7, Section 150.002 was amended twice in May 2005, but the first set of amendments addressed issues that are not raised in this appeal. To the extent possible, the two sets of amendments must be harmonized. *See* Tex. Gov't Code Ann. § 311.025 (West 2005). To the extent they cannot be harmonized, the latter amendment controls. *See id.*

12

plain designation that required flood insurance. Although "fall" is not a precise date, we take judicial

notice that, in its strict and colloquial sense, fall begins in Texas after September 1. *See* Webster's

Third New International Dictionary 818 (Phillip Gove Ed. 2002) (defining "fall" and referring to

"autumn," *id.* at 149). Consequently, the 2005 version of the statute applies to this appeal.[12]

**The 2005 amendment of § 150.002 requires a certificate of merit for non-negligence claims[13]**

Section 150.002(a), as amended in 2005, required a plaintiff to file a certificate of

merit in "any action or arbitration proceeding for damages arising out of the provision of professional

services by a licensed or registered professional." 2005 Tex. Gen. Laws at 370. The 2005

amendment removed the original language that expressly limited the certificate requirement to cases

alleging professional negligence, but left untouched the requirement that the certificate allege a

---

[12] This determination is based on the record before us in this appeal. This determination does not bar courts in the future from concluding, based on amended pleadings or subsequently adduced evidence, that the facts require application of a different version of the statute to particular appellees.

[13] Appellees assert that S & P conceded in the trial court's hearing on the motion to dismiss that the statute as amended in 2005 did not require a certificate of merit to be filed for non-negligence claims. That concession is not in the appellate record. It is noted in a letter brief from appellees' counsel to the court attached to appellees' brief as Appendix C. It was not made part of the clerk's record in this appeal. There is no reporter's record of the hearing in the record. There is no context presented for the concession—i.e., was it unconditional, or was it merely a statement that courts had held that the certificates were not required for non-negligence claims? Any concession may have been based on this Court's holding in *Consolidated Reinforcement, L.P. v. Carothers Executive Homes, Ltd.*, 271 S.W.3d 887, 893 (Tex. App.—Austin 2008, no pet.), which we overrule in this opinion. Without a clear delineation of the nature of appellant's counsel's statement at the hearing, we will not hold that S & P waived the right to argue that a certificate of merit is required for non-negligence claims. The parties, including appellees, have fully briefed the issue on appeal. We will address the merits of the issue of whether a certificate of merit was required for non-negligence claims in this case.

"negligent act, error, or omission." *See id.*[14] The removal of the limitation to negligence cases from the introductory phrase significantly changed the context of the unchanged phrase prescribing the content of the certificate. The Author's/Sponsor's Statement of Intent in the Senate Research Center's bill analysis is consistent with this conclusion. It provides in relevant part as follows:

> C.S.H.B. 1573 also eliminates ambiguities in Chapter 150, Civil Practice and Remedies Code, regarding certificates of merit for design professionals. **The major areas of clarification are to ensure that the need to file a certificate of merit exists when** a suit is being filed against an architecture or engineering business, not simply in suits against individual design professionals; the design professional signing the certificate has the same professional license as the defendant; **the suit is for damages arising out of the providing of any professional services,** except a suit or action for the payment of fees for professional services, **rather than only suits alleging professional negligence;** and that failure to file an affidavit under this section shall result in dismissal of the case against the defendant.

Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. H.B. 1573, 79th Leg., R.S. (2005) (emphases added). The plain language of the statute, the history of the statute, and the intent of the

---

[14] The relevant passage of the 2005 amendment of civil practice and remedies code section 150.002 provided as follows:

> Sec. 150.002 CERTIFICATE OF MERIT. (a) In any action *or arbitration proceeding* for damages *arising out of the provision of professional services* [alleging professional negligence] by a design professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party *licensed* [registered] architect or licensed professional engineer competent to testify, *holding the same professional license as*, and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error or omission claimed to exist and the factual basis for each such claim . . . .

2005 Tex. Gen. Laws at 370. (When an existing statute is amended by passage of an act, the session laws illustrate that as follows: "New material in the text of amended provisions is set in *italic type*; material deleted from the text of amended provisions is enclosed in brackets and set in strikeout type." 2005 Tex. Gen. Laws preface III. Unchanged text is set in plain type.)

drafter all show that the statute, as amended in 2005, required that a certificate be filed in any action—regardless of whether it was for negligence—so long as it arose out of the provision of professional services.[15]

The majority of a panel of this Court held in *Consolidated Reinforcement* that "non-negligence causes of action do not require an affidavit" under the 2005 amendments. 271 S.W.3d at 893. The panel majority pinned its decision on the unchanged language requiring that the certificate "shall set forth specifically at least one negligent act, error, or omission claimed to exist." Citing a rule of grammatical construction that an adjective preceding a series of nouns generally modifies every noun in the series, this Court concluded that the word "negligent" modified all three nouns in the "negligent act, error, or omission" phrase. *See id.* at 893. That panel majority opinion did not attempt to harmonize its interpretation of that phrase with the revised language of the statute expressly requiring a certificate in "any action" arising from the provision of professional services,

---

[15] A bill analysis for the 2009 amendment also is consistent with the view that the 2005 legislature intended to expand the scope of cases in which certificates of merits must be filed beyond negligence cases:

> The amendment requires an explanation for each theory of recovery sought, not just one example of negligence. This issue arose out of a couple of 2007 court cases from the San Antonio 4th Court of Appeals, which said that although the statute was broadened in 2005 from "negligence" actions to "any action arising out of the provision of professional services," the affidavit requirement still spoke only to negligence. Therefore, the court did not agree that it applied to actions other than negligence, **despite clear language in the statute and the fact that it was specifically amended to broaden it in 2005** (HB 1573).

House Comm. on Judiciary & Civil Jurisprudence, Bill Analysis, Tex. S. B. 1201, 81st Leg., R.S. (2009). This analysis and the 2009 amendments were written after this Court's 2008 opinion in *Consolidated Reinforcement*. 271 S.W.3d at 887.

15

nor did that panel majority opinion address the legislative intent expressed in the bill analysis. Instead, the *Consolidated Reinforcement* majority effectively repealed the 2005 amendment of section 150.002 that expanded the scope of cases in which certificates are required, citing two cases as instructive. *See id.* (citing *Kniestedt*, 281 S.W.3d at 454; *Gomez v. STFG, Inc.*, No. 04-07-00223-CV, 2007 Tex. App. LEXIS 7860 (Tex. App.—San Antonio Oct. 3, 2007, no pet.) (mem. op.)).

The San Antonio court stated the following in *Kniestedt*:

> The plain wording of the statute leads us to conclude that the legislature intended for the affidavit requirement to apply only to actions alleging negligence; otherwise, it would not have specified that the "affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist."

281 S.W.3d at 455. Finding that its plaintiff alleged an intentional tort, the *Kniestedt* court held that no certificate was required for this non-negligence claim. *Id.* The court did not evaluate the significance of the change in context of the "negligent act, error, or omission" phrase due to the 2005 amendment, nor did it address the legislative history or intent of the 2005 amendment. Three months later, a different panel of the San Antonio court issued *Gomez*. *See* 2007 Tex. App. LEXIS 7860. The *Gomez* panel noted that the appellant conceded at oral argument that, under *Kniestedt*, the plaintiff was not required to file a certificate of merit for non-negligence claims. *See id.* at *8. The panel's opinion that no certificate was needed turned, however, on the fact that the plaintiff had not alleged misconduct in the provision of professional engineering services—not on whether the plaintiff alleged negligence claims. *See id.* at *5-7. The *Gomez* opinion did not otherwise explore the meaning or import of the "negligent act, error, or omission" phrase.

Other courts of appeals also followed these opinions. The Thirteenth Court of Appeals relied on *Gomez* in declining to require dismissal for the failure of the plaintiff to file a certificate of merit for non-negligence claims. *See Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W.3d 492, 500 (Tex. App.—Corpus Christi 2009, no pet.). The court stated that *Gomez* held that "non-negligence claims are outside the scope of professional services." *Id.* The First Court of Appeals cited the opinions in *Kniestedt*, *Consolidated Reinforcement*, and *Landreth* and opined that "the 2005 version of section 150.002 does not apply in a suit other than one for negligent acts, errors, or omissions arising out of the provision of professional services." *Curtis & Windham Architects, Inc. v. Williams*, 315 S.W.3d 102, 108 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The court reasoned as follows:

> The Williamses' claims for damages for breach of fiduciary duty, fraud, deceptive trade practices, unjust enrichment, and the filing of a frivolous lawsuit against them and their request for a declaratory judgment do not implicate a negligent act, error, or omission by C & W. It simply makes no sense to require an affidavit of a licensed or registered professional setting forth "at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim" when, in fact, a plaintiff's causes of action do not concern negligence.

*Id*. at *14. The Corpus Christi and Houston courts did not discuss in their opinions whether "negligent" might modify only "act," address the meaning of the 2005 deletion of the "professional negligence" limitation from the opening phrase of the statute, or mention the author's express intent for the 2005 amendments.

The Fort Worth Court of Appeals acknowledged the tension between the "straightforward interpretation" of the "negligent act, error, or omission" phrase and the legislative

17

history and intent, but nevertheless reached the same conclusion reached in *Kniestedt* and its progeny:

> Even though the bill analysis on the amendment provides that the statute was amended to clarify, among other things, that the section applies when "the suit is for damages arising out of the providing of any professional services, except a suit or action for the payment of fees for professional services, rather than only suits alleging professional negligence," the statute after amendment, by its plain language, nevertheless continues to require the expert affiant to set forth "at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim." To require such an affidavit outside the context of a negligence cause of action would require an affidavit that had no relevance to the suit and would render the statute meaningless.

*See Parker County Veterinary Clinic, Inc. v. GSBS Batenhorst, Inc.*, No. 02-08-380-CV, 2009 Tex. App. LEXIS 8986, at *8 (Tex. App.—Fort Worth Nov. 9, 2009, no pet.) (mem. op.). The Fort Worth court rejected the dissent's argument in *Consolidated Reinforcement* that the word "negligent" modifies only "act," choosing to agree with the majority in *Consolidated Reinforcement* that under the rules of grammatical construction, the word "negligent" modifies each of the nouns that follow it. *Id.* at *9.

We respectfully disagree with the holdings that followed and relied on the initial ruling in *Kniestedt*. We conclude that their holding that the 2005 amendments did not expand the scope of cases in which a certificate of merit is necessary beyond negligence cases incorrectly gives a general rule of grammatical construction primacy over all other tenets of statutory construction. Their holding improperly rejects an alternate interpretation that would give effect to the plain meaning of the amended language in a way that better reflects the intent demonstrated by the amendment and the express intent of the legislature.

We are mindful that words and phrases must be "construed according to the rules of grammar and common usage," and acknowledge authority preferring that a single adjective preceding a list of nouns modifies each of the nouns. *See* Tex. Gov't Code Ann. § 311.011(a); *Consolidated Reinforcement*, 271 S.W.3d at 893. However, we are also instructed that words must be "read in context,"[16] that it is presumed that "the entire statute is intended to be effective,"[17] and that we may consider, among other matters, the "(1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; [and] (5) consequences of a particular construction."[18] We start by looking at the plain language of a statute before resorting to rules of construction. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999); *Hunt Constr. Group, Inc. v. Konecny*, 290 S.W.3d 238, 245 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

The legislature's intent to broaden the scope of cases in which a certificate is required is evident in the plain language of the statute, in the nature of the change made by the amendment, and in the legislative history. Section 150.002(a), as amended in 2005, plainly requires the filing of a certificate of merit "[i]n *any* action or arbitration proceeding for damages arising from the provision of professional services by design professionals." 2005 Tex. Gen. Laws at 370 (emphasis added). This language does not limit the scope of cases for which a certificate is required to any

---

[16] Tex. Gov't Code Ann. § 311.011(a) (West 2005); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008).

[17] Tex. Gov't Code Ann. § 311.021(2) (West 2005).

[18] *Id.* § 311.023.

19

theory of recovery. The fact that the new language replaces language requiring a certificate only in "any action for damages *alleging professional negligence*" emphasizes the intent to broaden the scope of cases in which a certificate is necessary. *See id.*

Like the Fort Worth court, we acknowledge the tension between the amended language broadening the scope of cases in which certificates are required and the unamended language requiring that the certificate specify a "negligent act, error, or omission." *See Parker County Veterinary Clinic*, 2009 Tex. App. LEXIS 8986, at *8-9. If the "negligent act, error, or omission" phrase is read to require a statement of negligence regardless of the type of claims, the statute requires irrelevant or irresponsible allegations of negligence by plaintiffs not alleging negligence. The *Kniestedt* court resolved this conflict by deciding that the statute continued to require certificates only in cases where negligence was alleged. *See* 281 S.W.3d at 455.

We resolve that apparent conflict differently, however, in a way that gives meaning to all parts of the statute and does not effectively repeal the amended statutory language. The amended introductory language requiring plaintiffs to file a certificate of merit in any type action for damages can be harmonized with the unamended language by reading the word "negligent" as modifying only "act" in the clause requiring a certificate "to set forth specifically at least one negligent act, error, or omission." This reading permits a plaintiff bringing a negligence claim to allege a negligent act (or an error or omission) that supports a negligence claim, but leaves room for a plaintiff bringing a non-negligence claim to allege a non-negligent act or omission underlying the claim. This interpretation gives meaning to the plain language of the amended statute requiring a certificate in any action for damages. The plain language of the statute permits this reading, and the revised context created by the amendment as well as the express intent of the legislature require this

20

departure from the general rule of construction regarding a single adjective preceding a series of nouns.[19]

The majority of this Court sitting en banc respectfully disagrees with the majority on the *Consolidated Reinforcement* panel. We overrule the contrary holdings in *Consolidated Reinforcement*, 271 S.W.3d at 893, we decline to follow cases from other courts holding that "negligent" must modify all three nouns in the contents phrase,[20] and we conclude that the word "negligent" modifies only the word "act." Consequently, under the 2005 amendments, a certificate of merit had to be filed in any action for damages arising out of the provision of professional services by a design professional—not just in actions alleging negligence—and the certificate of merit must specify (1) a negligent act, (2) an error, or (3) an omission, on which the claim is based.

Under this interpretation, appellees were required to file a certificate of merit in this case. Appellees allege that S & P was responsible for certification of the development plat for four phases of the development. They complain that the representations in and regarding the plat constitute violations of the deceptive trade practices act, statutory fraud, and common-law fraud. These claims relate to S & P's performance of professional services. Under section 150.002(a) as

---

[19] As discussed above, even if the amended language did not clearly demonstrate that the interpretation of the "negligent act, error, or omission" phrase had changed, the author of the 2005 amendment plainly expressed his intent that it should. Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. H.B. 1573, 79th Leg., R.S. (2005) (certificates of merit must be filed "the suit is for damages arising out of the providing of any professional services . . . rather than only suits alleging professional negligence"); *see also* House Comm. on Judiciary & Civil Jurisprudence, Bill Analysis, Tex. S. B. 1201, 81st Leg., R.S. (2009) (courts failed to broaden scope of cases in which certificates of merit must be filed despite "clear language in the statute and the fact that it was specifically amended to broaden it in 2005 (HB 1573).").

[20] *See generally Natex Corp. v. Paris Indep. Sch. Dist.*, 326 S.W.3d 728, 733(Tex. App.—Texarkana Nov. 1, 2010, pet. filed).

amended in 2005, appellees were required to file a certificate of merit regarding these claims. Appellees undisputedly did not file a certificate of merit on these claims, and the statute indicates that dismissal is appropriate. *See* 2005 Tex. Gen. Laws at 370 (formerly codified at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(d)).

However, because the parties and the trial court were proceeding under the authority of an opinion we overrule here, we conclude that justice requires a different result. *See* Tex. R. App. P. 43.3. We will adapt the grace period designed for cases filed within 10 days of the limitations period and employ it here. *Id.* (formerly codified at Tex. Civ. Prac. & Rem. Code Ann. § 150.002(b), now at *id.* § 150.002(c) (in cases in which the original petition is filed within 10 days of the expiration of the limitations period, plaintiffs may file affidavit within 30 days of the filing of the petition)). We reverse the order denying the motion to dismiss and remand the cause to the trial court for further proceedings. Appellees shall have thirty days from the date this judgment is mandated in which to file a certificate of merit satisfying the requirements of the statute as amended in 2005. Consistent with former section 150.002(b), failure to timely file a satisfactory certificate shall result in dismissal.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear, Pemberton, Henson, Rose, and Goodwin;
    Dissenting opinion by Justice Henson

Reversed and Remanded

Filed: February 18, 2011